UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHAE DAVIS,<br><br>      Plaintiff,<br><br>    v.<br><br>TIFFANY HARRISON,<br><br>      Defendant. | No. 2:24-cv-0493-SCR<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

    Defendant Tiffany Harrison is proceeding pro se in this action, which was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. section 636(b)(1). Plaintiff Tashae Davis is suing Defendant for defamation and intentional infliction of emotional distress. These claims stem from a series of conflicts—many of which were aired by Defendant over social media—concerning the late Iman Shabazz, who was Plaintiff's brother and Defendant's husband. Pending before the undersigned is Plaintiff's motion for judgment on the pleadings, filed May 6, 2024. ECF No. 7. Plaintiff's position is that judgment on the pleadings is appropriate because Defendant's answer fails to controvert material facts alleged in the complaint. For the reasons stated below, the Court recommends the motion for judgment on the pleadings be denied. The Court also orders that Defendant's First Amended Answer, which was not timely and was filed without leave of the court, be stricken.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff commenced this action on February 16, 2024, by filing a Complaint and paying the applicable filing fee. ECF No. 1. The Complaint alleges that Iman Shabazz, Plaintiff's older brother, became romantically involved with Defendant. *Id.* at ¶¶ 11-12. At the time, Mr. Shabazz was living with Plaintiff's eldest sister, Katonya Brittingham, and trying to overcome his problems with drug abuse. *Id.* at ¶ 13. Ms. Brittingham believed that Mr. Shabazz and Defendant were using drugs together. *Id.*

The Complaint further alleges that Mr. Shabazz and Defendant had children together, but that by February 2018 Mr. Shabazz had ended the relationship with Defendant. *Id.* at ¶¶ 18, 20. He then alternated between living with his sister Lorine, friends, and on the streets, before living with his aunt and uncle in Richmond, California. *Id.* at ¶ 20. Meanwhile, Defendant filed restraining orders against Mr. Shabazz based on allegations that he wanted to stalk and kill Defendant and their kids. *Id.* at ¶ 21. Defendant posted this allegation on social media, where she also accused Mr. Shabazz of tampering with her car in an attempt to harm her. *Id.* at ¶¶ 21-22. Defendant refused to delete this post even after Plaintiff told her that Mr. Shabazz would never do those things. *Id.* at ¶ 23. Defendant then moved their children out of state without Mr. Shabazz's permission and made them fear him so they would not visit him. *Id.* at ¶ 24-25, 28.

In February 2021, Mr. Shabazz suffered a stroke. *Id.* at ¶¶ 18, 20. On April 1, 2021, Plaintiff learned Mr. Shabazz had been hit by a car on the highway and visited him in the hospital. *Id.* at ¶ 29. The doctors doubted he would survive, and he was hospitalized for three months. *Id.* at ¶¶ 31-32.

During this time, Plaintiff's younger brother, Ashante Deaton, was accused of molestation and sexual abuse. *Id.* at ¶¶ 7, 36, 43. Defendant recorded herself falsely telling Mr. Shabazz that Plaintiff was in a molestation ring with Mr. Deaton, and that Plaintiff's family sought to kill Mr. Shabazz. *Id.* at ¶¶ 33, 38. After the hospital prohibited Defendant from visiting Mr. Shabazz, Defendant prohibited Mr. Shabazz from seeing his kids until she was back on the visitors' list. *Id.* at ¶¶ 34-35. She also spread details of the allegations against Mr. Deaton to Plaintiff's family, trying to blackmail Plaintiff into letting her visit Mr. Shabazz. *Id.* at ¶ 36. The Complaint alleges

2

that Defendant sought to manipulate Mr. Shabazz into giving her power of attorney, and to obtain money from him in the process. *Id.* at ¶¶ 36-37.

Twice in 2021, Plaintiff and Lorine filed claims against Defendant for civil harassment and annoyance. *Id.* at ¶ 39. Although the parties settled these cases, the Complaint alleges that Defendant broke any agreements reached thereunder. *Id.* In February 2022, Defendant was granted temporary conservatorship of Mr. Shabazz before she married him and took him to live with her in Washington state. *Id.* at ¶ 40.

The Complaint alleges that Defendant then started two petitions to have Plaintiff arrested based on false allegations that she abused Mr. Shabazz, brainwashed him, kept him from contacting his children, and was involved in a molestation ring with Mr. Deaton. *Id.* at ¶¶ 41-42. Meanwhile, in Defendant's care, Mr. Shabazz's health declined far more rapidly than during his hospitalization, including through multiple sepsis infections. *Id.* at ¶ 43. When Plaintiff called Adult Protective Services (APS), Defendant responded with an angry voicemail telling Plaintiff, inter alia, "you're going to jail, no matter how many times you call." *Id.* at ¶ 45.

After Plaintiff blocked Defendant's number, Defendant called Plaintiff from a new one just to say "we got [Plaintiff's brother] K.K. locked up, don't ever call APS on us again." *Id.* at ¶ 47. The Complaint alleges that Defendant then posted a recording of this call online in July 2023, the same month that Defendant created new social media accounts to contact Plaintiff's family to repeat her accusations against Plaintiff. *Id.* at ¶¶ 48, 50. Plaintiff eventually learned that on every day that month, Defendant posted screenshots of conversations between them and Plaintiff's personal photos and videos on TikTok, including videos taken of Plaintiff without her consent. *Id.* at ¶¶ 54-55. These TikTok videos repeated the allegations that Plaintiff abused Mr. Shabazz and took him hostage, adding that Plaintiff would be responsible if he died. *Id.* at ¶ 54.

More generally, the Complaint alleges that Defendant has encouraged her online followers to harass Plaintiff on social media. *Id.* at ¶ 56. This has forced Plaintiff to limit who can see her content. *Id.* The false allegations have extended to Plaintiff's husband (who Defendant accused of selling drugs as a school security officer), and Defendant has revealed Plaintiff's address and the names of Plaintiff's children, putting Plaintiff's entire family in danger. *Id.* at ¶ 57.

1  Based on the alleged facts, the Complaint includes causes of action for libel, libel per se,
2  slander, slander per se, and intentional infliction of emotional distress ("IIED"). *Id.* at 9, 12, 14,
3  16, 18. Aside from an injunction to prevent Defendant from posting more defamatory conduct,
4  Plaintiff seeks compensatory damages with interest, any statutory penalties under applicable law,
5  $1,000,000 in general damages, and attorney's fees and costs. *Id.* at 20.

6  Defendant filed her initial Answer on April 2, 2024. ECF No. 5. On May 6, 2024,
7  Plaintiff filed the current motion for judgment on the pleadings. ECF No. 7. On June 7, 2024,
8  Defendant filed a First Amended Answer ("FAA"). ECF No. 8.

## LEGAL STANDARD

After the pleadings are closed, "but early enough not to delay trial[,]" a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings and motions to dismiss a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim are subject to the same standard. *Gregg v. Department of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).

The court should grant a motion for judgment on the pleadings only if the moving party "'clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)). For such purposes, the court must accept as true all facts pled by the nonmoving party. *Cafasso v. General Dynamics C4 Systems*, 637 F.3d 1047, 1053 (9th Cir. 2011). As in other circumstances, a copy of a written instrument attached to the pleadings as an exhibit qualifies as part of said pleadings. Fed. R. Civ. P. 10(c). The court does not accept as true legal conclusions made in the pleadings, nor does it draw any "unwarranted factual inferences" from them. *United Food & Commercial Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022).

"A plaintiff may move for judgment on the pleadings if the answer fails to controvert material facts alleged in the complaint." *Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). When a plaintiff moves for judgment on the pleadings, the

4

1  question is not whether a complaint "'contain[s] sufficient factual matter, accepted as true, to

2  'state a claim to relief that is plausible on its face[.]'" *United Food*, 51 F.4th at 202 (quoting

3  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

4  544, 570 (2007))). The court instead asks "'whether the plaintiff's petition, stripped of those

5  allegations which are denied by the defendant's answer, would leave the petition stating a cause

6  of action against the defendant.'" *United Food*, 51 F.4th at 202 (quoting 61A Am. Jur.

7  2d *Pleading* § 497). In other words, while the answer's factual allegations are taken as true, the

8  complaint's factual allegations are only taken as true to the extent that they do not conflict with

9  the answer's factual allegations. *United Food*, 51 F.4th at 202 (quoting *Bass v. Hoagland*, 172

10  F.2d 205, 207 (5th Cir. 1949)).

## ANALYSIS

### I. First Amended Answer (ECF No. 8)

Defendant served Plaintiff with her original Answer by U.S. Mail on March 30, 2024. ECF No. 5 at 83-84. She filed her FAA on June 7, 2024, 32 days after Plaintiff filed the current motion for judgment on the pleadings. ECF No. 8.

A party may amend such pleadings once as a matter of course within 21 days of serving the pleadings. Fed. R. Civ. P. 15(a)(1)(A). A party who fails to do so within this timeframe may amend its pleadings only with either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Plaintiff did not consent to the filing of the FAA. Nor did the Court give Defendant leave to amend her Answer two months after serving the original. Permitting reliance on the FAA would also prejudice Plaintiff, who moved for judgment on the pleadings based on the Answer already on file.

The FAA is stricken from the record. The Court will analyze the motion for judgment on the pleadings based on the original Answer.

### II. Answer's Factual Allegations

#### A. Rule 8 Standards

The allegations in any pleading must be "simple, concise, and direct." Fed. R. Civ. P. 8(d). At the same time, "[n]o technical form is required." *Id.*

A party's response to pleadings must:

> (A) state in short and plain terms its defenses to each claim asserted against it; and
> (B) admit or deny the allegations asserted against it by an opposing party.

Fed. R. Civ. P. 8(b)(1). A denial must fairly respond to the substance of the allegation. Fed. R. Civ. P. 8(b)(2). If a party chooses not to deny all the allegations of a pleading, it "must either specifically deny designated allegations or generally deny all except those specifically admitted." Fed. R. Civ. P. 8(b)(3). Denial of an allegation includes a statement that the party lacks knowledge or information sufficient to form a belief about the truth thereof. Fed. R. Civ. P. 8(b)(5). An allegation is deemed admitted when not denied if responsive pleading is required. Fed. R. Civ. P. 8(b)(6). Plaintiff asserts that because the Answer fails to admit or deny the Complaint's allegations, or allege an affirmative defense, all factual allegations in the Complaint are treated as true. ECF No. 7-1 at 12.

### B. Defendant's Answer

The Answer begins with a PLD-Pl-003 form, a standard California state court form used for answering complaints alleging personal injury, property damage, or wrongful death. ECF No. 5 at 1-2. Defendant did not mark boxes indicating she wanted to generally deny the allegations of the Complaint, specifically deny or admit allegations in particular paragraphs, deny allegations in particular paragraphs either "on information and belief" or because of lack thereof, or exclude paragraphs from a general denial or admission. *Id.* She instead marked the "Other" box and began asserting that she has evidence as to various allegations against Plaintiff. *Id.* at 2.

Defendant first alleges that Plaintiff and Lorine bailed Mr. Deaton out of jail after he sexually abused Defendant's nephew, then leveraged Mr. Shabazz's illness to silence Defendant on this issue. *Id.* She alleges that Plaintiff helped groom Mr. Deaton's victims, which included Defendant's son and godson, and that Defendant went to several state agencies for help before turning to social media. *Id.* at 13-14. She further alleges that Plaintiff's misconduct has mentally harmed Defendant and her children, and Defendant's social media posts protected other families from the same. *Id.* at 7.

Defendant also asserts she will provide "evidence" that Plaintiff and Lorine kidnapped Mr. Shabazz and held him hostage in the medical center, denied him proper medical care while he was there, illegally used his food stamp benefits and Social Security Income for themselves, barred his children from visiting him while blaming Defendant for it, and tried to condition his release on Defendant stopping her attempts to expose Plaintiff's conduct. *Id.* at 5-6, 8-9. Defendant further alleges that Mr. Shabazz's insurance provider refused to pay because its fraud department learned that Plaintiff and Lorine were lying about Mr. Shabazz's discharge plans.[1] *Id.* at 7.

### C. Defendant's Answer Satisfies Rule 8

As a threshold issue, the Court must determine whether the material contained in Defendant's answer meets the requirements of Rule 8 and can therefore be credited in evaluating Plaintiff's motion for judgment on the pleadings. Plaintiff argues that Defendant's Answer "did not meet" Rule 8's requirements "and thus did not dispute Plaintiff's allegations." ECF No. 7-1 at 12. But Defendant, on page after page, stated that she has "evidence" of various facts that purport to refute Plaintiff's allegations. Those assertions are sufficient to satisfy Rule 8 and allow the Court to evaluate the substance of each disputed material fact. Rule 8's requirement that allegations be "simple, concise, and direct" is "more aspirational than descriptive of pleading practice[.]" *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1160 (10th Cir. 2007) (citing Fed. R. Civ. P. 8(d)(1)). Additionally, the Federal Rules explicitly disavow any formal requirement as to the format of an allegation's denial. Fed. R. Civ. P. 8(d)(1). Moreover, pro se pleadings such as Defendant's Answer are held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As a result, for purposes of the Rule 12(c) analysis, the Court will credit Defendant's allegations that she has "evidence" of particular facts, review each cause of action, and accept only the unchallenged assertions as true.

////

---

[1] As to Plaintiff's husband, Defendant alleges that he was removed from his position as a teacher at Foothill High School after he told school police that Defendant lied about him selling drugs to students. *Id.* at 14-15.

7

### III. Merits of Plaintiff's Claims

Plaintiff asserts that the allegations in Defendant's Answer fail to create any genuine issue of material fact as to each of Plaintiff's causes of action. ECF No. 7-1 at 12. Plaintiff is alleging libel and slander based on "false" allegations about Plaintiff and her family across various social media posts and online petitions. *See* ECF No. 1 at ¶¶ 9, 42, 51, 63, 66, 68, 74, 76, 82, 84, 90, 92, 100. Defendants' Answer does not contest Plaintiff's allegations she made the statements in question. As a result, the dispositive issue as to the defamation claims is whether Defendant asserts that her statements were true. This is also the dispositive issue as to Plaintiff's claim for intentional infliction of emotional distress.

#### 1. Libel and Libel Per Se

Under California law, libel is:

> a false and unprivileged publication by writing, … or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure a person in their occupation.

Cal. Civ. Code § 45. Courts divide the elements of defamation into "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (Cal. Ct. App. 2013).

Libel "on its face" or per se involves a falsehood in which the defamatory nature is apparent "without the necessity of explanatory matter[.]" Cal. Civ. Code § 45a. This may include a false allegation that a plaintiff is guilty of a crime. *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, 117 Cal. App. 4th 1138, 1145, n.7 (Cal. Ct. App. 2004) (citing *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1135 (Cal. Ct. App. 2003)). If libel is not per se, it is not actionable unless the plaintiff proves she suffered special damages, as defined in section 48a of the California Civil Code, as a proximate result thereof. Cal. Civ. Code § 45a.

The Complaint claims libel based on Defendant's social media posts alleging that Plaintiff mentally and physically abused Mr. Shabazz, kidnapped him, held him hostage, engaged in blackmail, attempted to murder him, and ultimately murdered him. ECF No. 1 at ¶ 67. The

Complaint alleges that after a pattern of hostile conduct, Defendant posted the claims of "alleged abuse" to harass Plaintiff and tarnish her reputation. *Id.* at ¶ 69. These posts are also the basis of Plaintiff's claim of libel per se. *Id.* at ¶¶ 75-78.

The Answer addresses each criminal allegation in Plaintiff's claims for libel. It alleges that Defendant can prove Plaintiff "kidnapped" Mr. Shabazz and held him hostage at the hospital. ECF No. 5 at 5. Defendant alleges Plaintiff abused Mr. Shabazz by denying him medical care and preventing him from seeing his children. *Id.* at 5-6, 10. She further alleges that Plaintiff blackmailed Mr. Shabazz by telling him he could only leave the hospital if Mr. Shabazz and Defendant stopped trying to expose Plaintiff and Mr. Deaton for sexually abusing minors. *Id.* at 6. Finally, Defendant explicitly claims to "have evidence to prove Iman Shabazz was murdered and prevented from anything to help him heal[,]" presumably by Plaintiff. *Id.* at 8.

The Answer comprehensively challenges the Complaint's assertion that any of Defendant's criminal allegations against Plaintiff were false and therefore defamatory. This material dispute of fact affects whether Plaintiff can succeed on libel claims. Judgment on the pleadings as to both libel and libel per se should be denied.

### 2. Slander and Slander Per Se

Slander is "a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which[,]" inter alia, "[c]harges any person with crime[.]" Cal. Civil Code § 46(1). Case law more broadly defines slander as "a false and unprivileged oral communication, or uttering certain other derogatory statements regarding a person." *Bryant v. Lowe's Home Centers, LLC*, 628 F.Supp.3d 1036, 1042 (E.D. Cal. 2022) (quoting *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (Cal. 2003)).

It is not clear whether the law recognizes a cause of action for "slander per se," as framed in the Complaint. *See* ECF No. 1 at 14-18. Regardless, both slander claims cite Defendant's videos on social media alleging that Plaintiff "abused her brother, kidnapped him, or tried to kill him." *Id*. at ¶¶ 84, 92. As discussed above, the Answer alleges that Defendant can prove Plaintiff kidnapped Mr. Shabazz by taking him to the hospital (ECF No. 5 at 5), abused him by denying him proper medical care and preventing his children from seeing him (*Id.* at 5-6), and killed him

9

while denying him anything that could help him heal (*Id.* at 8).  If Defendant can in fact prove her allegations, she never said anything defamatory because she never said anything false.

Judgment on the pleadings as to both slander claims should be denied.

### 3. Intentional Infliction of Emotional Distress

To prevail on a claim for IIED, the plaintiff must show:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Barker v. Fox & Associates*, 240 Cal. App. 4th 333, 355 (Cal. Ct. App. 2015) (quoting *Hughes v. Pair*, 46 Cal.4th 1035, 1050–1051 (Cal. 2009)).  Behavior may be "outrageous" if the defendant:

> (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

*Clark v. County of Tulare*, 755 F.Supp.2d 1075, 1091 (E.D. Cal. 2010) (quoting *Molko v. Holy Spirit Assn.,* 46 Cal.3d 1092, 252 Cal.Rptr. 122, 762 P.2d 46 (1988)).

Whether conduct is outrageous under this definition is a question of fact.  *See Berry v. Frazier,* 90 Cal. App. 5th 1258, 1274 (Cal. Ct. App. 2023) (quoting *So v. Shin*, 212 Cal.App.4th 652, 672 (Cal. Ct. App. 2013)).  No bright-line rule separates actionable and inactionable conduct, and distinguishing between the two requires an "intuitive" and "case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility."  *Berry,* 90 Cal. App. 5th at 1274 (quoting *KOVR-TV, Inc. v. Superior Court,* 31 Cal.App.4th 1023, 1028 (Cal. Ct. App. 1995)).

The Complaint alleges that Defendant's daily efforts to defame and harass Plaintiff online are "so extreme that it exceeds all bounds of decency in a civilized community[.]"  ECF No. 1 at ¶ 99.  It further alleges that Defendant jeopardized Plaintiff's safety by distributing her personal information whenever she made those accusations.  *Id.* at ¶ 100.  Finally, the Complaint asserts

that the "emotional, mental, and physical distress" caused by this conduct is amplified by the fact that Plaintiff is trying to process the grief arising from Mr. Shabazz's death. *Id.* at ¶ 101.

Defendant's alleged conduct would certainly qualify as outrageous if her statements about Plaintiff and her family are false. But as discussed above, judgment on the pleadings for any defamation claim is improper because the veracity of Defendant's allegations against Plaintiff is in dispute. *See supra*. Whether daily posts about Plaintiff and her family are extreme and outrageous if Defendant's allegations are true is unclear. Plaintiff cites no case law indicating that prolific social media posting about another individual constitutes IIED where the contents of the posts are substantially true, even if extremely unflattering.

This ambiguity extends to the leaking of Plaintiff's personal information, including her address and physical appearance. There is surprisingly little case law on whether "doxing" an individual can constitute IIED. One court suggested that doxing, in combination with defamatory content, would be a predicate for IIED. *See Lord v. Smith*, Case No. 22-cv-2689, 2022 WL 17668707, at *6 (N.D. Ill. Dec. 14, 2022) ("Lord has included a claim for intentional infliction of emotional distress, which is directly tied to the fear he experienced that someone would have both the means and motivation to carry out such threats because of these posts [about sexual misconduct with minors, which revealed Lord's identity and home address]."). If Defendant lied about Plaintiff's actions and shared her personal information so others could harass her, as Plaintiff claims, the Court would be comfortable finding such conduct outrageous. *See* ECF No. 1 at ¶¶ 56-57, 99-100. However, in light of Defendant's claims that her statements about Plaintiff were true, the Court cannot conclude at this point that the course of Defendant's conduct was outrageous and therefore forms a basis for IIED. Adjudicating the IIED claim will have to await a fact-intensive appraisal of a fully developed record. *See Berry,* 90 Cal. App. 5th at 1274.

Judgment on the pleadings as to IIED should be denied.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's First Amended Answer (ECF No. 8) is STRICKEN from the docket; and
2. The Clerk of the Court is directed to assign a district judge to this case.

11

**IT IS FURTHER RECOMMENDED THAT**:

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**SO ORDERED**.

DATED: March 3, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE